J-S68014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.M.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1116 WDA 2019 |

Appeal from the Decree Entered June 28, 2019
In the Court of Common Pleas of Mercer County Orphans' Court at No(s):
2019-145A

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED JANUARY 2, 2020**

D.B. (Father) appeals from the decree entered in the Court of Common Pleas of Mercer County (orphans' court) granting B.B.'s (Mother) petition seeking the involuntary termination of Father's parental rights to the minor child, C.M.B. (Child) (born June 2012), so that C.B. (Stepfather) can adopt Child.  We affirm.

Father and Mother never married but lived together on numerous occasions.  Mother has had primary physical custody of Child since she was born, subject to Father's periods of partial physical custody.  Father struggles with drug addiction, including methamphetamines and heroin.  He was incarcerated from December 2015 through March 2018, and then from August

_____

[*] Retired Senior Judge assigned to the Superior Court.

2018 through the present. His lengthy criminal background includes convictions for Robbery, Operation of a Meth Lab, Burglary, and Possession with Intent to Deliver a Controlled Substance (PWID). Father has never paid any child support to Mother, and, when employed, threatened to quit his job to avoid wage attachments. Father's last visit with Child was in July 2018.

Mother and Stepfather married in February 2019. On March 1, 2019, Mother filed a petition for involuntary termination of Father's parental rights to Child. The orphans' court appointed counsel for Father and a guardian *ad litem* for Child. The court held a hearing on the petition on June 26, 2019.

On June 28, 2019, the orphans' court entered its decree terminating Father's parental rights pursuant to The Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).[1] The court determined that Father failed to maintain contact with

---

[1] These provisions state:

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 2 -

Child once he was incarcerated in August 2018, that he showed no interest in supporting her financially or emotionally, and made minimal effort to maintain a parent-child bond with her. Father timely appealed and he and the orphans' court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)(2)(i)-(ii).

On appeal, Father challenges the orphans' court's termination of his parental rights.[2] He claims that the court, in finding that he made virtually no effort to maintain the parent-child relationship, did not consider adequately the fact that he was incarcerated. Father avers that because he is incarcerated, his ability to inquire about Child is limited and Mother cut off contact with him. He also challenges the court's credibility determinations, claiming that it accepted Mother's version of the facts and disregarded his entirely.

---

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

[2] "[O]ur standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." **In re Z.P.**, 994 A.2d 1108, 1115 (Pa. Super. 2010) (citation omitted).

**I.**

In cases involving the termination of parental rights, "[w]e give great deference to the trial courts that often have first-hand observations of the parties spanning multiple hearings." *In re Adoption of K.M.G.*, 2019 WL 4392506, at *6 (Pa. Super. filed Sept. 13, 2019) (*en banc*) (citation omitted). "The trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact." *In re B.C.*, 36 A.3d 601, 605 (Pa. Super. 2012) (citation omitted). "Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result." *In re R.L.T.M.*, 860 A.2d 190, 191–92 (Pa. Super. 2004) (citation omitted). "In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so." *Id.* (citation and internal quotation marks omitted).

In this case, as previously mentioned, the orphans' court found that Mother met her burden of proof under 23 Pa.C.S. § 2511 (a)(1) and (b). In order to terminate parental rights pursuant to section 2511(a)(1), the moving party must establish "that for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super.

2003) (citation omitted). "Although the six months immediately preceding the filing of the petition are the most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." ***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). Additionally, "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

"A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." ***In re C.M.S.***, 832 A.2d 457, 462 (Pa. Super. 2003) (citation omitted). Once the evidence establishes a failure to perform parental duties, the trial court must then consider: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." ***In re Z.S.W***., 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

We also note that a parent's responsibilities are not tolled during his incarceration. ***See In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). Rather, we must inquire whether the parent has used those resources at his

disposal while in prison in continuing a close relationship with the child. ***See id.*** "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited." ***Id.*** (citation omitted).

## II.

## A.

In this case, Father contends that the orphans' court did not have competent evidence because it did not credit his testimony that, despite the obstacles he faced, including his incarceration and Mother's thwarting of his attempts to contact Child, he made efforts to maintain his bond with Child as evidenced by the numerous phone calls he made to Mother and letters he sent to Child.

In support of this argument, Father points to his testimony that during the relevant time period, he wrote fifteen to twenty letters to Child, and that he attempted to call her on approximately fifteen occasions, at different hours of the day because he did not know when Mother worked or if Child was in school. (***See*** N.T. Hearing, 6/26/19, at 36-37). He further testified that he had just started serving his thirty-five to seventy month sentence for the PWID offense and he was unaware of his minimum release date. (***See id.*** at 29-30).

In contrast, Mother testified that in the six months leading up to her filing of the petition, Father wrote two letters to Child, one of which Mother was able to find. (***See id.*** at 17-19). Mother also testified that Father called

her cell phone a few times during school hours when Child was unavailable and while Mother was at work and was unable to answer the phone. (**See id.** at 19). The one time Mother did answer Father's phone call when he called in the evening, they had an argument and he did not ask if Child was present. (**See id.** at 19-20). Mother further testified that during the relevant time period, Father did not provide any financial or emotional support for Child and that he did nothing resembling parenting towards Child with regard to her healthcare, schooling, education or religion. (**See id.** at 21-22).

After weighing the testimony, the orphans' court found Father's testimony not credible, and it specifically credited Mother's testimony that Father only sent two letters and that she spoke with Father over the phone on one occasion. (**See** Trial Court Opinion, 8/14/19, at 4). The credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. **See In re Adoption of A.C.H**., 803 A.2d 224, 228 (Pa. Super. 2002). Absent an abuse of discretion, an error of law or insufficient evidentiary support for the trial court's decision, the decree must stand. **See In re B.L.W.**, 843 A.2d 380, 383 (Pa. Super. 2004). In this case, there was no abuse of discretion in the orphan's court's finding that Father was not credible. In making the credibility determination, the court explained that:

> In judging the credibility of the parties the Court considered several factors. Although the Mother could have simply denied that she ever received any correspondence or phone calls from the Father, she admitted to receiving two letters and talking with the Father over the phone on one occasion. The Mother also brought one of the letters to the hearing and offered it as an

exhibit, and she explained that she lost the other letter when she moved. She provided details of the phone call including that it turned into an argument for reasons that were logical in light of the Father's family's anger toward the Mother. The Father's prior behavior evinced a lack of interest in providing for or even communicating with the Child and that pattern was consistent with the Mother's testimony rather than the Father's. For all these reasons, the Court made its decision based on the credible and competent testimony of the Mother.

Not only is that explanation well-reasoned, it belies Father's argument that the orphan's court did not consider his testimony in arriving at its determination. Given this credibility finding, Father's history of drug abuse (methamphetamine and heroin), including an overdose, that he had not had a visit with Child since July 2018, and that he has been incarcerated for a large portion of her life, we discern no abuse of discretion in the court's decision to terminate Father's parental rights to Child pursuant to section 2511(a)(1).

**B.**

We next address Father's claim regarding subsection 2511(b), specifically, that it is in Child's best interests that his parental rights be preserved, given the vital relationship he has developed with her during her lifetime. We begin by noting that if the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The needs and welfare of the child include intangibles such as love, comfort, security and stability. *See In re Adoption of K.M.G.*, *supra* at *8. A determination regarding the child's needs and welfare requires

consideration of the emotional bonds between the parent and child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).

Father claims that at the evidentiary hearing, when Mother was questioned as to whether or not Child had exhibited any behavior that would indicate that she missed Father, Mother replied, "Not recently." (RR. 15a). Father contends that this supports his position that it would hurt Child if his parental rights were terminated. However, "Not recently" is not competent evidence to show that Child would be harmed if Father's parental rights were terminated, absent a showing that it was within six months of the filing of the termination proceeding.

In any event, Mother's husband is going to adopt Child, which will place Child in a more stable environment. Mother credibly testified that Father has provided no emotional care for Child and that Child currently exhibits no behavior indicating that she misses Father. (*See* N.T. Hearing, 6/26/19, at 21, 27). The record is clear that Father has failed to stabilize his life for Child, that he has engaged in persistent criminality and drug abuse, and that he has made minimal effort to show any interest in the well-being of Child. After review, we agree with the court's conclusion that Child's needs and welfare can best be met by terminating the parental rights of Father.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2020